IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DIONESIO CORDELL SANCHEZ, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00096 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Dionesio Cordell Sanchez, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging claims of excessive force and bystander liability. Defendants filed a motion for summary judgment and Sanchez responded, making this matter ripe for disposition. After reviewing the record, I conclude that defendants' motion for summary judgment must be granted in part and denied in part.

**I.**

Sanchez alleges that on August 12, 2014, while housed at Wallens Ridge State Prison and after an altercation between Sanchez, two other inmates, and several guards, defendants Isabell, Brummett, Sturgill, Eads, Stanley, Hughes, and Smith repeatedly subjected him to excessive force.[1] Sanchez also alleges that defendants Combs, Holloway, and King witnessed the other defendants' use of excessive force, but failed to intervene and stop it. Approximately one hour after the excessive force incidents ended, Sanchez was transferred to Red Onion State Prison ("Red Onion"). Sanchez lists numerous injuries that he suffered as a result of the excessive force, including cuts, bruises, a broken bone, nerve damage, and "extreme pain."

---

[1] Sanchez does not allege any facts against defendant Smith in his complaint; however, he collectively refers to the defendants as having used excessive force and he specifically implicates Smith in his grievance as one of the officers who used excessive force against him. Defendants do not argue that Sanchez failed to allege facts against Smith in their motion for summary judgment. Accordingly, I will liberally construe Sanchez's allegations concerning the use of excessive force as against defendant Smith for the purpose of adjudicating the motion for summary judgment.

Sanchez states that defendant Clarke, the Director of the Virginia Department of Corrections ("VDOC"), is "responsible for the overall administration of the VDOC" and that Clarke failed to "promulgate proper provisions/policies to ensure [Sanchez's] rights weren't violated" and to "enforce/train in relation to the relevant provisions/policies that do exist," thereby "contributing to the violations" of Sanchez's rights.

Defendants filed a motion for summary judgment arguing that Sanchez failed to properly exhaust administrative remedies; Sanchez's allegations failed to state a claim against defendants Clarke and Holloway; Sanchez's claim for damages against the defendants in their official capacities is barred; and defendants are entitled to qualified immunity.

In response to the motion for summary judgment, Sanchez states that when he arrived at Red Onion, he repeatedly asked for an informal complaint form over the course of multiple weeks, but was not given one. Because he could not get a form, Sanchez alleges that he wrote out a complaint on a blank piece of paper and submitted it to the grievance department. When he did not receive a response to that complaint, he again requested a form from prison staff, to no avail. Thereafter, another inmate agreed to "smuggle" an informal complaint to Sanchez on the recreation yard. Sanchez filed an informal complaint on October 8, 2014. In a response dated October 20, 2014, Sanchez was told that his complaint was forwarded to the Special Investigations Unit for investigation. Sanchez alleges that two investigators came to see him and he reported to them that officers were harassing and threatening him to "keep quiet until the investigation was over." Sanchez alleges that the investigators told him that, for his safety, he would be transferred soon.[2]

---

[2] Sanchez was transferred to Sussex I State Prison in early November 2014 "for administrative investigation" and then transferred back to Red Onion in December 2015.

On October 25, 2014, Sanchez filed a regular grievance concerning the excessive force allegations. The grievance was rejected at intake as untimely filed. Sanchez appealed to no avail.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party, a reasonable fact-finder could return a verdict for the nonmovant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the nonmovant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the nonmovant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). Summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). In adjudicating a motion for summary judgment, a court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir.

1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the nonmoving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

## III.

VDOC Operating Procedure ("OP") § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, the inmate must demonstrate that he has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. Generally, a Regular Grievance must be submitted within thirty calendar days from the date of the incident. An exception to this time requirement is in instances "beyond the offender's control."

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. A grievance meeting the criteria for acceptance is logged in on the day it is received.[3] If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the

---

[3] Up to three levels of review for a regular grievance exist. The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review which is conducted by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. The Level II response informs the offender whether he may pursue an appeal to Level III.

grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman.

## IV.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "'[T]he language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensible requirement, thus requiring an outright dismissal [of unexhausted claims] rather than issuing continuances so that exhaustion may occur.'" *Carpenter v. Hercules*, No. 3:10cv241, 2012 U.S. Dist. LEXIS 72096, at *12, 2012 WL 1895996, at *4 (E.D. Va. May 23, 2012) (emphasis in original) (quoting *Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003)). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made

5

clear that exhaustion is now mandatory."). But, I am "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

Sanchez states in an affidavit, that for weeks after the alleged excessive force incidents, he repeatedly asked for an informal complaint form, but staff would not give him one. He also alleges that he tried writing a complaint on a blank piece of paper, which he submitted to the grievance department, but he got no response. Thereafter, he began requesting a form again, but still did not get one. He finally was able to get a form from another inmate approximately three months after the excessive force incidents and submitted an informal complaint upon obtaining the form. Defendants do not rebut Sanchez's statements. On the record before me, defendants have not demonstrated that they are entitled to summary judgment based on their argument that Sanchez failed to exhaust administrative remedies. Accordingly, I will deny defendants' motion for summary judgment as to exhaustion.

## V.

Sanchez summarily alleges that defendant VDOC Director Clarke failed to train, supervise, and promulgate policies which would have prevented the defendants from subjecting him to excessive force. Supervisory liability under § 1983 may not be predicated on the theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or

6

customs. *Fisher v. Washington Metropolitan Area Transit Author.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991). To impose liability on a supervisor for a failure to train subordinates, a plaintiff must plead and prove that 1) a subordinate actually violated the plaintiff's constitutional rights; 2) the supervisor failed to properly train the subordinate, thus illustrating a supervisor's "deliberate indifference" to the rights of violated by the subordinate; and 3) the failure to train actually caused the subordinate to violate the plaintiff's rights. *Brown v. Mitchell*, 308 F. Supp. 2d. 682, 701 (E.D. Va. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

Other than bald and speculative allegations that Clarke failed to train, supervise, and promulgate policies, Sanchez does not identify any evidence of any specific act or omission by Clarke that violated his rights. Accordingly, I will grant defendants' motion for summary judgment as to the claims against defendant Clarke.[4]

## VI.

To the extent Sanchez brings this action against the defendants in their official capacity for monetary damages, his claim is not cognizable in § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Therefore, I will grant defendants' motion for summary judgment as to Sanchez's claim for monetary damages against defendants in their official capacity.

## VII.

Defendants assert that they are entitled to qualified immunity. The onus is on a defendant asserting qualified immunity to actually put forth authorities and argument showing that he is entitled to it. "The burden of proof and persuasion with respect to a defense of qualified

---

[4] To the extent Sanchez attempts to hold defendant Holloway liable as a supervisor, his claim fails for the same reasons.

immunity rests on the official asserting that defense." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013). Defendants have not met their burden.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether the law was clearly established, the court "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (1999)), *vacated on other grounds*, 133 S. Ct. 9 (2012).

In support of their qualified immunity argument, defendants state that there are "no allegations of conduct which violate clearly established statutory or constitutional rights of which a reasonable person would have known" and "[d]efendants' conduct has not transgressed any bright lines and there is not knowing violation of law." Sanchez alleges that in several separate incidents, defendants Isabell, Brummett, Sturgill, Eads, Stanley, Hughes, and Smith "sadistically and maliciously" beat him while he was in handcuffs and in shackles. Sanchez also alleges that defendants Combs, Holloway, and King witnessed the other defendants' use of excessive force, but failed to intervene and stop it. The facts, as I must view them for purposes of summary judgment, would be sufficient to support a trier of fact's finding that the defendants' conduct

8

amounted to constitutional violations. Moreover, a reasonable officer would know that gratuitously beating Sanchez, or failing to intervene to stop the beating, would be unlawful. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). Accordingly, I will deny defendants' motion for summary judgment as to their qualified immunity argument.

ENTER: This 9th day of February, 2017.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE